(No. 107139.—

MARK O. STERN, Appellee, v. WHEATON-WARRENVILLE COMMUNITY UNIT SCHOOL DISTRICT 200, Appellant.

*Opinion filed May 21, 2009.*

John A. Relias, Julie Heuberger Yura and Katie L. Belpedio, of Franczek Radelet & Rose P.C., of Chicago, for appellant.

Shawn M. Collins and Robert L. Dawidiuk, of The Collins Law Firm, P.C., of Naperville, for appellee.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Jane Elinor

Notz, Deputy Solicitor General, of Chicago, of counsel), for *amicus curiae* Attorney General of Illinois.

Terry Pastika, of Elmhurst, for *amicus curiae* Citizen Advocacy Center.

Donald M. Craven and Esther J. Seitz, of Springfield, for *amicus curiae* Illinois Press Association.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The principal issue in this appeal is whether a school superintendent's employment contract is exempt from disclosure under section 7 of the Freedom of Information Act (FOIA or Act) (5 ILCS 140/7 (West 2006)). We hold that it is not exempt from disclosure, and affirm in part and vacate in part the judgment of the appellate court (384 Ill. App. 3d 615), and remand for further proceedings.

### BACKGROUND

On January 26, 2006, plaintiff, Mark Stern, a resident of Wheaton, Illinois, submitted a FOIA request to defendant, Wheaton-Warrenville Community Unit School District 200 (the District), requesting, *inter alia,* a copy of the employment contract of the District's then school superintendent, Dr. Gary Catalani. The District's records keeper, Denie Young, denied Stern's FOIA request, stating that because the contract is contained in the superintendent's personnel file, it is exempt from disclosure.

Stern sought assistance from the Illinois Attorney General's office. In response, the Attorney General's

Public Access Counselor sent a letter to Catalani, stating in relevant part:

"Please be advised that employment contracts are public information both under the Freedom of Information Act, 5 ILCS 140, and the Illinois Constitution.

The Act specifically identifies as public records, 'all information in any account, voucher, or contract dealing with the receipt or expenditure of public or other funds of public bodies.' 5 ILCS 140/2(c). Access to certain kinds of public records also is guaranteed by article VIII, section 1(c) of the Illinois Constitution of 1970, which provides that 'reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law.' "

Stern thereafter renewed his FOIA request for a copy of the superintendent's employment contract. In a letter dated April 25, 2006, from the District's legal counsel, Stern's request was denied. Stern appealed that decision to the school board president, Andrew Johnson. Johnson denied the appeal. Stern again contacted the Attorney General's office. In response, the chief of the Attorney General's Public Access and Opinions Division sent a letter to the District's legal counsel, reiterating the Attorney General's position that the record sought by Stern is a "public record" that the school district is obligated to furnish under FOIA, and asking that the District reconsider Stern's requests. The District declined to do so. Thus, on November 21, 2006, Stern filed a complaint against the District in the circuit court of Du Page County seeking injunctive relief under FOIA.

In his complaint, Stern detailed the history of his FOIA requests, the District's denials, and the Attorney General's involvement. Although adhering to his position that the employment contract must be disclosed, Stern argued in the alternative that the District waived any statutory exemption when it disclosed the employment

contract to other individuals, including members of the news media.

The District moved for summary judgment, arguing that no material issues of fact existed and that, pursuant to *Copley Press, Inc. v. Board of Education for Peoria School District No. 150*, 359 Ill. App. 3d 321 (2005), an employment contract that is found in a personnel file is *per se* exempt from disclosure under section 7(1)(b)(ii) of FOIA (5 ILCS 140/7(1)(b)(ii) (West 2006)). In support of its motion, the District provided an affidavit from Dr. Lori Belha, the District's Assistant Superintendent for Human Resources, in which she attests that Catalani's employment contract is part of his personnel file and physically maintained therein.

In opposition to the District's summary judgment motion, Stern argued that the *Copley* case is inapplicable because it involved a FOIA request for disciplinary records, not an employment contract. Stern also argued that the personnel file exemption does not apply because the superintendent's employment contract "bears on [his] public duties" (5 ILCS 140/7(1)(b)(ii) (West 2006)) and must be disclosed. Stern further advanced the Attorney General's position: because the contract deals with the expenditure of public funds, disclosure is required under section 2(c)(vii) of FOIA (5 ILCS 140/2(c)(vii) (West 2006)) and article VIII, section 1, of the Illinois Constitution (Ill. Const. 1970, art. VIII, §1). Finally, Stern argued that, pursuant to *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401 (1997), the District waived any exemption when it disclosed the contract to the news media.

As to the waiver issue, Stern relied on Catalani's discovery deposition, as well as correspondence, fax transmittals, and e-mails documenting two FOIA requests from local newspapers. These sources reveal that on May 2, 2006, Catherine Edelman, a staff writer with

the Daily Herald, sent a FOIA request to Catalani seeking a copy of his employment contract and all other documents dealing with the superintendent's "perks and compensation," for a "news story on how superintendents are paid." Edelman requested the information within seven working days, "as the law stipulates," and asked that any denial of her request identify the specific statutory exemption justifying the denial, as well as appeal procedures.

The record discloses that on May 8, 2006, Catalani, from his District office, faxed a copy of his employment contract to Edelman. In his discovery deposition, Catalani testified that Edelman's FOIA request did not go through the "typical FOIA mechanism" in that Denie Young, who handles FOIA requests, was not involved. According to Catalani, he chose not to involve the District and instead dealt with the request from the Daily Herald on a personal level, voluntarily furnishing a copy of his contract to Edelman. Catalani trusted that the Daily Herald would not publish his contract. Catalani explained that the Daily Herald FOIA request:

> "was much different than any other request regarding contracts in that it was a request from a reporter that went to every single superintendent in Du Page County for the purpose of writing what I understood to be a comparative analysis of superintendent contracts in general, and in discussion with my colleagues throughout Du Page, I agreed to, along with them, furnish a personal copy of my contract."

According to Catalani, every superintendent in Du Page County responded to the Daily Herald FOIA request by furnishing a copy of his or her contract to the newspaper.

Catalani also testified that if Stern, like the Daily Herald, had directed his FOIA request to him directly, he would not have furnished a copy of his employment contract to Stern. Catalani explained that he objected to information posted on the website of "Educate 200," a

citizen advocacy group with which Stern is affiliated, and did not have the same faith in Stern, as he did in the Daily Herald, as to how his employment contract would be used if it was disclosed. Catalani also testified that an article that appeared in the November 23, 2008, edition of the Daily Herald regarding Stern's lawsuit against the District accurately reported Catalani's view that Stern and Educate 200 have not used information to which they have had access "in a fair or honorable way."

The record further discloses that on October 11, 2006, Young received a FOIA request from a reporter at the Chicago Tribune, seeking a copy of Catalani's employment contract. The reporter noted that he was aware that Young had denied Stern's request for the same information, that the Attorney General's office consistently has maintained that the contract is a public record that the District is obligated to furnish, and that the Daily Herald was furnished a copy of the contract. In response, Young stated that under *Copley*, a contract placed in a personnel file is exempt from disclosure, and this is the reason Stern's FOIA request was denied. Young also advised the reporter: "You are correct that the contract was given to the Daily Herald under an FOI request, but we responded prior to being aware of the [*Copley*] decision. Since there is nothing unusual in Dr. Catalani's contract, he will make it available to you for review should you wish to *** inspect it."

The circuit court found that the exemption in section 7 of FOIA for personnel files applied to the superintendent's employment contract and granted the District's motion for summary judgment. The circuit court explained that, under *Lieber*, any documents that fit within the specifically enumerated exemptions in section 7 are *per se* exempt from disclosure, and that under *Copley*, a personnel file can reasonably be expected to include an employment contract. Thus, the superintendent's con-

tract was *per se* exempt from disclosure. The circuit court did not expressly address Stern's argument that the District waived any exemption. Stern took an immediate appeal.

The Second District reversed the grant of summary judgment and remanded the matter to the circuit court for an *in camera* inspection of the superintendent's contract. 384 Ill. App. 3d at 625. The appellate court reviewed the *Copley* opinion, but declined to apply a *per se* rule which would exempt from disclosure any document found within a personnel file. 384 Ill. App. 3d at 622. Instead, the appellate court followed the approach adopted by the Fourth District in *Reppert v. Southern Illinois University*, 375 Ill. App. 3d 502 (2007), which was decided after the circuit court had ruled. The appellate court explained:

> "Although section 7(1)(b)(ii) exempts personnel files, section 7(1)(b) states plainly that information bearing on public duties of public employees 'shall' not be exempt from disclosure. Section 8 allows for the disclosure of nonexempt material contained in exempt items through the use of redaction, and section 11(f) requires a court to make an *in camera* inspection of the requested records to determine whether part or all of them are exempt from disclosure. Thus, to the extent that a personnel file contains both private information of the type ordinarily intended to be protected within such a file and information that bears on public duties, the trial court must determine, through an *in camera* inspection of the file, whether the requested information is exempt as a clearly unwarranted invasion of personal privacy, and whether the presence of exempt private information can be cured through redaction." 384 Ill. App. 3d at 622.

The appellate court concluded that this result is consistent with both *Lieber* and the plain language of FOIA. 384 Ill. App. 3d at 623. Because the appellate court found the contract was not exempt from disclosure, the court did not address Stern's constitutional argument. 384 Ill. App. 3d at 624.

As to the waiver issue, the appellate court found that questions of fact exist as to whether Catalani's disclosures of his contract to the Daily Herald and Chicago Tribune, pursuant to their FOIA requests, was within the scope of his authority. "If the trial court determines that they were, then any claim to an exemption, whether *per se* or not, would be waived." 384 Ill. App. 3d at 624.

We allowed the District's petition for leave to appeal. See 210 Ill. 2d R. 315. We also allowed the Illinois Attorney General, the Illinois Press Association, and the Citizen Advocacy Center to file briefs as *amici curiae* in support of Stern. See 210 Ill. 2d R. 345.

## ANALYSIS

Whether Catalani's employment contract is exempt from disclosure under section 7(1)(b)(ii) of FOIA (5 ILCS 140/7(1)(b)(ii) (West 2006)), as the District claims, is initially a matter of statutory construction. Accordingly, our review proceeds *de novo*. *O'Casek v. Children's Home & Aid Society*, 229 Ill. 2d 421, 440 (2008). *De novo* review is also appropriate because this appeal arises from an order granting summary judgment. *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

The public policy and legislative intent underlying the General Assembly's adoption of FOIA is expressly set forth in section 1 of the Act:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

This Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the forementioned rights of the people to access to information.
\*\*\*

These restraints on information access should be seen as limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed to this end." 5 ILCS 140/1 (West 2006).

Simply stated, the purpose of FOIA "is to open governmental records to the light of public scrutiny." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989). Accordingly, section 3 of the Act mandates that "[e]ach public body *shall* make available to any person for inspection or copying all public records, except as otherwise provided in Section 7." (Emphasis added.) 5 ILCS 140/3(a) (West 2006).

No dispute exists that the District is a "public body" subject to the Act's disclosure requirements. See 5 ILCS 140/2(a) (West 2006) (" 'Public body' means any \*\*\* school districts"). Further, no dispute exists that the superintendent's employment contract constitutes a "public record" under the Act. We note that the term "public records" is expansively defined as:

"[A]ll records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, recorded information and all other documentary materials, regardless of physical form or characteristics, having been prepared, or having been or being used, received, possessed or under the control of any public body." 5 ILCS 140/2(c) (West 2006).

In addition, the term "public records" expressly includes "all information in any account, voucher, or contract

dealing with the receipt or expenditure of public or other funds of public bodies." 5 ILCS 140/2(c)(vii) (West 2006). Because the superintendent's employment contract is a public record, the District is obligated to disclose the contract to Stern, "except as otherwise provided in Section 7." 5 ILCS 140/3(a) (West 2006). See also *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003) ("when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions set forth in section 7 of the Act applies").

Section 7 contains several exemptions from disclosure. The District relies on the exemption for "personnel files" set forth in section 7(1)(b)(ii) (5 ILCS 140/7(1)(b)(ii) (West 2006)). Section 7(1)(b) states in relevant part:

"The following shall be exempt from inspection and copying:
   ***
      (b) Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:
      ***
         (ii) personnel files and personal information maintained with respect to employees, appointees or elected officials of any public body or applicants for those positions[.]" 5 ILCS 140/7(1)(b) (West 2006).

Where, as here, the requesting party challenges the public body's denial of a FOIA request, the public body must demonstrate that the records requested fall within the claimed exemption. *Lieber*, 176 Ill. 2d at 408. In support of its claimed exemption, the District argues that under the rule adopted in *Lieber*, as applied in *Copley*,

the superintendent's contract is *per se* exempt from disclosure, and that the appellate court erred by ordering an *in camera* inspection of the contract. Relying on the appellate court opinion in *Reppert*, Stern counters that the superintendent's contract is not exempt from disclosure because it constitutes "information that bears on the public duties of public employees and officials." 5 ILCS 140/7(1)(b) (West 2006). Stern further counters that the employment contract must be disclosed pursuant to article VIII of the Illinois Constitution (Ill. Const. 1970, art. VIII, §1(c) ("Reports and records of the obligation, receipt and use of public funds of *** school districts are public records available for inspection by the public according to law")). *Amici* advance similar arguments.

In *Lieber*, this court adopted a *per se* rule for information falling within one of the specifically enumerated exemptions set forth in section 7(1)(b) of the Act. That is, "[w]here the public body claims that a requested document falls within one of these specifically enumerated categories and is able to prove that claim, no further inquiry by the court is necessary." *Lieber*, 176 Ill. 2d at 408. This is so because information which falls within a specifically enumerated exemption is, by definition, " '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.' " *Lieber*, 176 Ill. 2d at 408, quoting 5 ILCS 140/7(1)(b) (West 1994). Where a public body, however, asserts an exemption for information which is not specifically included in one of the enumerated exemptions in section 7(1)(b), the information is not *per se* exempt, and the court must determine, on a case-by-case basis, whether the disclosure of such information would constitute an unwarranted invasion of personal privacy. *Lieber*, 176 Ill. 2d at 408-09.

Significantly, *Lieber* did not involve a FOIA request for an employment contract. Nor did *Lieber* involve a

claim by the requester that the information bears on a public employee's public duties. Rather, at issue in *Lieber* was whether a state university was required to provide the owner of university-approved off-campus housing a list containing the names and addresses of individuals who had contacted the university about freshman housing. The university argued that it properly denied the request, pursuant to section 7(1)(b)(i), which exempts from disclosure personal information maintained with respect to students or other individuals receiving education services from a public body. See 5 ILCS 140/7(1)(b)(i) (West 1994). We held that this exemption did not apply because the information requested related to individuals who had not yet enrolled and, therefore, were not "students" or "other individuals" receiving education services. *Lieber*, 176 Ill. 2d at 410-11. *Lieber* does not address the issues now before this court.

*Copley*, also cited by the District, involved a request by Copley Press and the Peoria Journal Star for performance evaluations of a school superintendent, and a letter from the school board to the superintendent explaining its decision to place the superintendent on administrative leave. The trial court ordered the release of the documents; the appellate court reversed. *Copley*, 359 Ill. App. 3d at 322. Relying on the *per se* rule adopted in *Lieber*, the appellate court first concluded that the superintendent's personnel file was exempt from disclosure under section 7(1)(b)(ii) of the Act. *Copley*, 359 Ill. App. 3d at 324. The appellate court next considered whether the requested documents were properly placed in the personnel file and thus shielded from disclosure. Relying on section 2 of the Personnel Record Review Act (820 ILCS 40/2 (West 2002)), the appellate court stated:

> "Given its plain and ordinary meaning, a 'personnel file' can reasonably be expected to include documents such as a resume or application, *an employment contract*, policies signed by the employee, payroll information, emer-

gency contact information, training records, performance evaluations and disciplinary records." (Emphasis added.) *Copley*, 359 Ill. App. 3d at 324.

The appellate court recognized that "[a] document cannot be made part of a personnel file simply by placing it there," but held that the requested documents "are precisely what one would expect to find in a personnel file and are thus *per se* exempt from disclosure." *Copley*, 359 Ill. App. 3d at 325.

Although the *Copley* opinion included employment contracts in the list of documents that are *per se* exempt from disclosure, *Copley*, like *Lieber*, did not involve a request for an employment contract and did not consider whether a document, even if normally maintained in a personnel file, is subject to disclosure because it bears on the public employee's public duties. Thus, *Copley* provides little guidance. *Reppert*, however, cited by Stern and followed by the appellate court in the instant case, considered these very issues.

In *Reppert*, plaintiffs filed a FOIA request with a state university seeking disclosure of employment contracts for several university employees. The circuit court upheld the university's denial of the request and dismissed the complaint, finding that the employment agreements fell within the exemption for personnel files. The appellate court reversed and remanded, holding that the contracts are not exempt as a matter of law. *Reppert*, 375 Ill. App. 3d at 507. The appellate court considered the legislature's clearly stated public policy and intent, and the court's obligation to accord FOIA a liberal construction. *Reppert*, 375 Ill. App. 3d at 505. Reading the exemption in section 7(1)(b) narrowly, the appellate court found that the employment contracts constitute " 'information that bears on the public duties of public employees and officials' " and, therefore, their disclosure " 'shall not be considered an invasion of personal privacy.' " *Reppert*, 375 Ill. App. 3d at 507, quoting 5 ILCS 140/7(1)(b) (West

2004). The *Reppert* court declined to follow what it termed the "broad *dicta*" in *Copley* under which the employment contracts would be *per se* exempt from disclosure. *Reppert*, 375 Ill. App. 3d at 507. The appellate court noted that section 8 of FOIA explicitly permits the disclosure of nonexempt documents (such as the requested employment contracts) that are contained within exempt public records (such as the relevant personnel files). *Reppert*, 375 Ill. App. 3d at 507, citing 5 ILCS 140/8 (West 2004).

The statutory interpretation and analysis of section 7(1)(b) set forth in *Reppert* is persuasive and provides this court guidance in determining the appropriate treatment of employment contracts under FOIA.

*Reppert* applied a fundamental principle of statutory interpretation particularly relevant here: a court must " 'view all provisions of a statutory enactment as a whole,' " construing words and phrases not in isolation, but " 'in light of other relevant provisions.' " *Reppert*, 375 Ill. App. 3d at 504-05, quoting *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). See also *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 87 (2001) ("we must give effect to the entire statutory scheme"). Accordingly, the exemption for personnel files set forth in section 7(1)(b) of the Act, on which the District relies, must be evaluated in connection with the balance of section 7(1)(b) and other relevant provisions, so that effect is given to the entire statutory scheme.

As stated earlier, the Act is intended to "open governmental records to the light of public scrutiny." *Bowie*, 128 Ill. 2d at 378. Thus, under FOIA, "public records are presumed to be open and accessible." *Lieber*, 176 Ill. 2d at 407. The Act expressly contemplates "full and complete" disclosure of the affairs of government and recognizes that such disclosure is necessary to en-

able the people to fulfill their duties to monitor government. 5 ILCS 140/1 (West 2006). To that end, this court has held that "FOIA is to be accorded 'liberal construction' " (*Southern Illinoisan*, 218 Ill. 2d at 416, quoting *Bowie*, 128 Ill. 2d at 378), and the statutory exemptions from disclosure must be read narrowly (*Southern Illinoisan*, 218 Ill. 2d at 416; *Lieber*, 176 Ill. 2d at 407; *Bowie*, 128 Ill. 2d at 378).

Section 7(1)(b) carves out an exemption from FOIA's broad disclosure requirements for "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2006). The General Assembly identified specific items—such as personnel files—which fall within the personal privacy exemption. 5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006). Importantly, the General Assembly also placed a limitation on the reach of the personal privacy exemption: "The disclosure of information that bears on the public duties of public employees and officials shall *not* be considered an invasion of personal privacy." (Emphasis added.) 5 ILCS 140/7(1)(b) (West 2006).

An "employment contract" is "[a] contract between an employer and employee *in which the terms and conditions of employment are stated.*" (Emphasis added.) Black's Law Dictionary 344 (8th ed. 2004). Thus, by its very nature, the superintendent's employment contract, as a whole, constitutes "information that bears on [his] public duties." The District itself acknowledged in the circuit court that "an employment contract deals with the duties and responsibilities of the person who signs it, especially the superintendent of schools." The District advances no argument to the contrary before this court. We conclude, therefore, that the disclosure of the superintendent's employment contract, and employment contracts generally, does not constitute an invasion of personal privacy for purposes of section 7(1)(b) of the Act

and must be disclosed as a matter of law. See *Reppert*, 375 Ill. App. 3d at 507.

The fact that an employment contract may be physically maintained within a public employee's personnel file is insufficient to insulate it from disclosure. If the purpose of the personnel file exemption is to prevent the Act from being used to violate personal privacy, and the Act expressly provides that "[t]he disclosure of information that bears on the public duties of public employees," such as employment contracts, "shall not be considered an invasion of personal privacy," then a contract's physical location within an otherwise exempt record is irrelevant. This conclusion, as the *Reppert* opinion notes, is borne out by section 8 of the Act. *Reppert*, 375 Ill. App. 3d at 507. Section 8 states:

> "If any public record that is exempt from disclosure under Section 7 of this Act contains any material which is not exempt, the public body shall delete the information which is exempt and make the remaining information available for inspection and copying." 5 ILCS 140/8 (West 2006).

As this court has observed, the mere "commingling" of exempt and nonexempt material does not prevent a public body from disclosing the nonexempt portion of the record. *Bowie*, 128 Ill. 2d at 380.

Our conclusion that the superintendent's employment contract must be disclosed also finds support in section 7(1)(q) of the Act (5 ILCS 140/7(1)(q) (West 2006)). This section keeps confidential documents and materials relating to collective bargaining between public bodies and their employees or representatives, but requires that "any final contract or agreement shall be subject to inspection and copying." 5 ILCS 140/7(1)(q) (West 2006). Were we to adopt the District's interpretation of the Act, the contract governing members of a teachers' union, for example, would be open to public scrutiny, but the superintendent's contract would remain

secret. Such an anomalous result cannot be what the General Assembly intended, particularly in light of the public policy underlying the Act: the people's "right to know." 5 ILCS 140/1 (West 2006).

The District's interpretation of the Act also cannot be reconciled with the statutory definition of "public records." As noted earlier, FOIA defines "public records" very broadly and expressly includes "all information in any *** contract dealing with the *** expenditure of public or other funds of public bodies." 5 ILCS 140/2(c)(vii) (West 2006). We are not persuaded that the General Assembly would, on the one hand, expressly provide for the disclosure of information in any contract dealing with the expenditure of public funds, but on the other hand, exempt such a contract from disclosure simply because a copy might be located within a personnel file. Nor are we persuaded that the General Assembly would mandate the disclosure of "the names, salaries, titles, and dates of employment of all employees and officers of public bodies" (5 ILCS 140/2(c)(viii) (West 2006)), but keep from public scrutiny other elements of a public employee's compensation package contained within his or her employment contract.

We hold that an employment contract is not the kind of record the General Assembly intended to keep from public view and does not fall within the exemption for personnel files in section 7(1)(b) of the Act. The superintendent's contract must be disclosed.

Contrary to the District's argument, requiring disclosure of employment contracts does not render the *per se* rule this court adopted in *Lieber* meaningless. The *per se* rule still has general applicability where the information requested falls within one of the six specific exemptions to disclosure set forth in section 7(1)(b). See 5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006). In the present case the District simply failed to establish

that the *per se* exemption for personnel records encompasses employment contracts. Accordingly, the circuit court erred in granting the District's motion for summary judgment.

In light of our holding, we need not consider Stern's argument that disclosure of the superintendent's employment contract is required under article VIII, section 1(c), of the Illinois Constitution (Ill. Const. 1970, art. VIII, §1(c) ("Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law")). See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort").

The appellate court remanded the matter to the circuit court to conduct an *in camera* inspection of the superintendent's employment contract, pursuant to section 11(f) of FOIA (5 ILCS 140/11(f) (West 2006)), "to determine if any portion of the contract does not bear on public duties and is exempt as a clearly unwarranted invasion of personal privacy." 384 Ill. App. 3d at 623. We agree that remand for an *in camera* inspection of the contract is appropriate, but disagree as to the scope of the inspection. On remand, the circuit court is directed to conduct an *in camera* inspection of the contract to determine whether it contains personal information (such as a social security number or bank account information) which, if disclosed, would constitute an unwarranted invasion of Catalani's personal privacy. See 5 ILCS 140/7(1)(b) (West 2006). Such information must be deleted. See 5 ILCS 140/8 (West 2006). We do not intend, however, for the *in camera* inspection to become a battle of details, requiring the circuit court to parse the contract and determine whether each individual paragraph or subsection bears on Catalani's public duties. As

already discussed, an employment contract, as a whole, bears on the employee's public duties and, moreover, constitutes a "contract dealing with the *** expenditure of public or other funds of public bodies" (5 ILCS 140/2(c)(vii) (West 2006)). Thus, with the exception noted above for personal information, Catalani's employment contract must be disclosed in its entirety.

As a final matter, we note that we need not consider whether the District waived any exemption when the contract was voluntarily furnished to the news media. That issue has been rendered moot by our holding that the entire contract, with limited exception, must be disclosed. Accordingly, we vacate that portion of the appellate court opinion which would have remanded the case to the circuit court for consideration of this issue. See 384 Ill. App. 3d at 623-24.

## CONCLUSION

For the reasons stated, we affirm in part and vacate in part the judgment of the appellate court, and remand the matter to the circuit court for further proceedings consistent with our directions herein.

*Appellate court judgment affirmed in part*
*and vacated in part;*
*cause remanded with directions.*