NOTICE
Decision filed 02/14/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220824-U

NO. 5-22-0824

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JAMAL SHEHADEH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Christian County. |
| | ) | |
| v. | ) | No. 22-MR-32 |
| | ) | |
| THE CITY OF TAYLORVILLE, | ) | Honorable |
| | ) | Douglas C. Gruenke, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court correctly granted a motion to dismiss the plaintiff's Freedom of Information Act complaint where the plaintiff requested a copy of his own letter to the mayor of Taylorville and where the letter was not a "public record" because it did not pertain to "public business" and it was not "prepared by or for, *** used by, received by, in the possession of, or under the control of" a "public body" as that term is defined by statute (5 ILCS 140/2(a), (c) (West 2020)).

¶ 2     At issue in this appeal is whether the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)) requires compliance with a citizen's request for a copy of a letter that the citizen sent to an individual public official, such as the mayor of a city. The plaintiff, Jamal Shehadeh, filed a FOIA complaint against the defendant, the City of Taylorville (City), when its FOIA officer sent him a letter denying his request for a copy of his own letter to the mayor of Taylorville. The trial court dismissed the complaint with prejudice, finding that the plaintiff's

1

request for a copy of his own letter was inconsistent with the stated legislative purpose of FOIA. See *id.* § 1. The plaintiff appeals, arguing that (1) his letter was a "public record" within the statutory definition in FOIA and (2) the court erred in questioning whether his proposed interpretation of FOIA was consistent with its purposes and whether it would subject cities to frivolous lawsuits, matters he contends are outside the scope of the issues before the court. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On March 4, 2022, the plaintiff, while incarcerated in the Christian County jail, sent a letter to the mayor of Taylorville complaining "about the city attorney and other matters." Although the record does not include a copy of the letter and the complaint does not contain any allegations setting forth its precise contents, the City maintains that the letter contained complaints about attorney Rocci L. Romano's conduct while representing the City in another lawsuit that was pending between the plaintiff and the City, and the plaintiff acknowledged during argument to the trial court that the letter contained complaints about Romano.[1] The letter also included a request for a copy of the letter, which was couched as a request under FOIA.

¶ 5     On April 6, 2022, the City's FOIA officer denied the plaintiff's request for a copy of his letter to the mayor. She indicated that the plaintiff's letter constituted "an improper and illegal attempted communication" with representatives of the City who were represented by counsel in

---

[1]We note that multiple appeals are currently pending before this court involving suits by the plaintiff against the City of Taylorville, the Village of Kincaid, Taylorville Police Chief Dwayne Wheeler, and various other county and municipal officials. We may take judicial notice of the records in those proceedings. *Bush v. J&J Transmissions, Inc.*, 2017 IL App (3d) 160254, ¶ 11 (citing *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976)). At issue in at least one of those cases are multiple letters the plaintiff sent to Chief Wheeler and the mayor concerning various aspects of his pending actions against the City and Wheeler, including complaints about Romano's conduct in that litigation.

pending litigation with the plaintiff. She noted that such communications had been prohibited by a court order. As such, she explained, the plaintiff's March 4 letter was "not a valid FOIA request."

¶ 6    On April 26, 2022, the plaintiff filed a *pro se* motion for leave to file a complaint under FOIA.[2] The proposed complaint was attached to the motion. In it, the plaintiff argued that when his letter was received by the mayor, "it became a public record as defined by the FOIA." He further argued that the City had no legal basis for denying his request for a copy of the letter. As relief, the plaintiff requested (1) a declaration that the City's refusal to produce a copy of the letter was unlawful, intentional, willful, and in bad faith; (2) an order directing the City to produce a copy of the letter; and (3) costs and civil penalties.

¶ 7    On May 31, 2022, the trial court granted the plaintiff's motion for leave to file the petition. The petition was filed that day.

¶ 8    On July 5, 2022, the City filed a motion to dismiss the plaintiff's petition pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)). The City argued that (1) the letter was an improper attempt by a *pro se* litigant to make direct contact with a represented opposing party in another pending case rather than a legitimate FOIA request; and (2) the letter was not a "public record" under FOIA because it was addressed to the mayor, who was not a "public body" under FOIA. Although the motion to dismiss did not cite section 2-615 of the Code (*id.* § 2-615), the City also argued that for the reasons stated, the complaint failed to state a claim for a violation of FOIA.

---

[2]In October 2021, a Christian County trial judge entered an order finding the plaintiff to be a vexatious litigant and requiring him to seek leave of the court before filing any new cases in Christian County.

¶ 9 On July 11, 2022, the plaintiff filed a response in opposition to the City's motion to dismiss. He argued, in pertinent part, "All records in the possession or control of a public body, its agents, officers, and its employees that pertain to public business are subject to the FOIA."

¶ 10 The trial court held a motion hearing on December 16, 2022. Although several motions were pending in four different cases involving the same parties, including this case, the court considered only the motion to dismiss filed in this case and a motion to dismiss filed in one other pending case.

¶ 11 The City argued that the plaintiff's letter is not a "public record" as defined by FOIA because it was sent to the mayor, who is not a "public body" under FOIA's statutory definition. Counsel called the court's attention to two cases cited in his motion to dismiss—*City of Champaign v. Madigan*, 2013 IL App (4th) 120662, and *Quinn v. Stone*, 211 Ill. App. 3d 809 (1991). Counsel explained that pursuant to the reasoning of both cases, individual city aldermen are not "public bodies" under FOIA, and, as such, communications sent to or by aldermen only become public records within the meaning of FOIA if they are discussed at a public meeting or communicated to a sufficient number of other aldermen to constitute a quorum of the city council.

¶ 12 The court asked counsel to acknowledge that there is a difference between an alderman and a mayor, emphasizing that mayors have powers individual aldermen do not, including the power of appointment. In response, counsel argued, "But the mayor does not have the power, unilaterally, to get rid of the [City's] attorney, *** to approve or disapprove his fees. That is the power of the council as a whole." He further argued that it is the city council that is a "public body" under FOIA, not its individual members, and because the city council is comprised of the mayor and the aldermen, the rationale of *City of Champaign* and *Quinn* applies to mayors as well as individual aldermen.

4

¶ 13     The plaintiff began by arguing that a FOIA request is not required to take any specific form. He argued, "Merely asking for a copy of the communication sent to a public official to be returned to the author is and of itself a Freedom of Information request." The plaintiff opined that requesting a copy of his own letter was reasonable and not "vexatious or disagreeable." He explained that he made this request because he wanted "legal written proof" that his complaint "had been made part of the public record," and it was difficult for inmates to obtain copies of correspondence due to "a convoluted process to get legal copy." The plaintiff noted that asking for a copy of his correspondence had been his "practice in dealing with the City of Taylorville for two years."

¶ 14     Addressing the plaintiff, the court stated, "I've seen several of the requests and you always seem to ask for a copy of the letter back. It usually comes with other documents. So, in this particular situation, what was the information that you're requesting outside of your request?" The plaintiff replied, "It was just so that I had a written proof that my complaint, my communication containing my complaint about Mr. Romano's services, had been made part of the public record."

¶ 15     The court then stated, "The purpose of FOIA, the stated purpose of FOIA in section one *** is not so that you can get confirmation that somebody received it. The purpose of FOIA is to *** make sure that the records are open to the public and people have access to those records." The court asked the plaintiff how his request for a copy of his own letter fit within this purpose and whether his interpretation would open the door to "multiple frivolous lawsuits" subjecting municipalities to sanctions "simply because they didn't return a copy of the request."

¶ 16     In response, the plaintiff argued that returning a copy of a letter to the citizen who sent it would impose "no burden on the public body." He explained that the City has "certain record-keeping obligations," including stamping correspondence with the date and the word "received."

¶ 17    The court agreed that returning a copy of a letter would not be a burden on the City. The court stated, however, "But we don't even get to the issue of whether it's a burden." The court explained that the question for the plaintiff was how his request for a copy of his own letter fit within the stated legislative purpose of FOIA, which is ensuring that all people have access to information regarding the affairs of government.

¶ 18    The plaintiff argued that the stated legislative purpose of FOIA was not "necessarily binding when there's a more specific provision that controls." He argued that the requested document—a copy of his letter to the mayor—falls within the statutory definition of a public record, which includes "all information in the possession or control of [a] public body." He further argued that any doubts should be construed broadly in favor of disclosure.

¶ 19    The court ruled from the bench. In explaining his decision to grant the City's motion to dismiss, the trial judge explained, "I think it violates the spirit of FOIA to send merely a request asking for a copy of that request back." In a docket entry that day, the court stated that "for reasons stated on the record," the court granted the City's motion to dismiss with prejudice. This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    The plaintiff argues that (1) under the express statutory language of FOIA, his letter to the mayor was a public record subject to disclosure; and (2) the court's questions concerning the purpose of FOIA and the possibility of opening the door to frivolous lawsuits went beyond the scope of the issue before it. We reject these contentions.

¶ 22    This appeal comes to us after a ruling on a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)). In ruling on section 2-619 motions, courts must accept all well-pled facts in the complaint as true and interpret those allegations in the light most favorable

6

to the plaintiff. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 33. A section 2-619 motion admits (or assumes) the legal sufficiency of the complaint, but it asserts the existence of an affirmative defense or another matter that defeats the plaintiff's claim. *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 11. As we mentioned earlier, although the City did not cite section 2-615 in its motion to dismiss, it did argue that the plaintiff's complaint failed to state a claim for relief under FOIA. In determining whether to dismiss a complaint for failure to state a claim, courts must likewise accept all well-pled facts in the complaint as true and interpret those allegations in the light most favorable to the plaintiff. A complaint should not be dismissed for failure to state a claim unless it is apparent that no set of facts can be proven that would entitle the plaintiff to relief. *Heinrich v. White*, 2012 IL App (2d) 110564, ¶ 9. We conduct a *de novo* of the trial court's ruling. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000).

¶ 23    The purpose of FOIA is to make public records open to public scrutiny. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 20; see 5 ILCS 140/1 (West 2020). As the plaintiff correctly points out, the records of public bodies are thus presumed to be subject to disclosure. 5 ILCS 140/1.2 (West 2020). With certain enumerated exceptions,[3] public bodies must make "all public records" available for inspection or copying. *Id.* § 3(a). The provision requiring access to public records is applicable to any person. *Id.*

¶ 24    Any person denied access to inspect or receive a copy of a public record may file an action seeking an injunction or declaratory relief. *Id.* § 11(a). If the plaintiff prevails in the action, the

---

[3]The City argues that an exemption for "[i]nformation specifically prohibited from disclosure by federal or State law" is applicable here. See 5 ILCS 140/7(1)(a) (West 2020). This is so, the City contends, because the plaintiff's letter was an improper attempt to complain about opposing counsel. Before the trial court, the City argued that this exemption applied because the letter was an improper attempt to contact opposing parties who were represented by counsel. While we are skeptical that either of these improprieties would make the contents of the letter "information specifically prohibited *from disclosure*" under state or federal law, we need not address this argument because we will conclude that the letter was not a "public record" as that term is defined under FOIA.

court must award the plaintiff reasonable attorney fees and costs. *Id.* § 11(i). Civil penalties are also available if the court determines that the public body willfully and intentionally violated FOIA "or otherwise acted in bad faith." *Id.* § 11(j). Here, the plaintiff requested all of these remedies. We note that because the court found that his complaint did not allege a FOIA violation, the court did not reach the question of civil penalties. As such, although both parties address this issue, we do not believe it is before us.

¶ 25 The plaintiff argues that the court erred in dismissing his complaint because the document he requested—a copy of his own letter to the mayor—falls within the statutory definition of a "public record," which includes "writings [and] letters *** received by *** any public body." See *id.* § 2(c). He contends that the City's argument that a communication sent to the mayor must be shared with a quorum of the city council before it becomes a public record is contrary to the express statutory language. In his reply brief, he argues that the cases cited by the City to support its contention are distinguishable because they involved individual aldermen, not mayors. With no explanation or citation to authority, he asserts that unlike an individual alderman, the office of a mayor is a public body under FOIA. We find these arguments unpersuasive.

¶ 26 FOIA's statutory definition of a "public record" is, as the plaintiff contends, rather broad. In pertinent part, that definition includes all "writings [and] letters" that are "prepared by or for, *** received by, in the possession of, or under the control of any public body." *Id.* There are two important limitations, however. First, the requested material must pertain "to the transaction of public business." *Id.*; see also *City of Champaign*, 2013 IL App (4th) 120662, ¶ 30. Second, the record must have been prepared or received by or be under the possession or control of a public body as that term is defined under FOIA. 5 ILCS 140/2(c) (West 2020). For the reasons that follow, we find that neither of these requirements is satisfied here.

¶ 27　Whether a document "pertains to 'public business' " is a "threshold question." *City of Champaign*, 2013 IL App (4th) 120662, ¶ 32. Because FOIA does not define that term, we must give the words their plain and ordinary meanings. *Id.* ¶ 31 (citing *In re M.T.*, 221 Ill. 2d 517, 524 (2006)). In *City of Champaign*, the Fourth District looked to the dictionary definition of the word "public" and concluded that "to qualify as a public record a communication must first pertain to 'business or community interests as opposed to private affairs.' " *Id.* (quoting Merriam-Webster's Collegiate Dictionary 941 (10th ed. 2000)).

¶ 28　Here, as we discussed earlier, the plaintiff acknowledged during his argument to the trial court that his letter contained complaints regarding the conduct of the attorney representing the City in other actions filed against it by the plaintiff. Complaints concerning the conduct of opposing counsel in the plaintiff's own litigation against the City do not involve community interests as opposed to private affairs. As such, they do not "pertain to public business" within the meaning of FOIA.

¶ 29　We next consider whether a letter addressed to and received by the mayor is received by or under the possession or control of a "public body." FOIA defines "public body" to include "all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts[,] and all other municipal corporations, boards, bureaus, committees, or commissions of the State." 5 ILCS 140/2(a) (West 2020). Notably, this definition does not include individuals. *City of Champaign*, 2013 IL App (4th) 120662, ¶ 30; see also *Korner v. Madigan*, 2016 IL App (1st) 153366, ¶ 11 (explaining that FOIA authorizes suit only against public bodies, not against individuals); *Quinn*, 211 Ill. App. 3d at 812 (concluding that individual aldermen are not included in FOIA's definition of a public body, noting that other Illinois statutes using the same term likewise do not include

individuals, and citing examples of statutes that either contain no references to individual persons or distinguish between certain individuals and the public body).

¶ 30 In *City of Champaign*, a case relied upon by the City, the appellate court found that individual aldermen and members of a city council are not public bodies under FOIA. *City of Champaign*, 2013 IL App (4th) 120662, ¶ 40. In reaching this conclusion, the court pointed out that an individual city council member "cannot conduct the business of the public body" without a quorum of council members. *Id.* The court then went on to hold that communications that are prepared, used, received, and controlled by individual city council members might nevertheless become public records subject to disclosure under FOIA if they are shared during city council meetings, "*i.e.*, during the time the individual city council members were functioning collectively as the 'public body.' " *Id.* ¶ 42.

¶ 31 Although discussed at length by both parties, neither this aspect of the court's holding nor its observation that individual city council members cannot act without a quorum is particularly pertinent here. *City of Champaign* involved a journalist's FOIA request for electronic communications, including text messages, that were sent and received by the mayor and city council members during city council meetings using their personal devices. *Id.* ¶¶ 4, 43. The primary rationale underlying the court's decision was its concern that finding the communications at issue not subject to disclosure "would allow members of a public body, convened as the public body, to subvert the Open Meetings Act (5 ILCS 120/1 to 7.5 (West 2010)) and FOIA requirements simply by communicating about city business during a city council meeting on a personal electronic device." *Id.* ¶ 43. That concern is not implicated in this case. The only question in this case is whether the mayor is a public body as that term is defined under FOIA, a question we have already answered in the negative.

10

¶ 32    The plaintiff contends, however, that an individual alderman is different from a mayor, thus rendering both cases the City relies upon distinguishable. We disagree.

¶ 33    Both the trial court and the plaintiff are correct in noting that unlike individual aldermen, mayors do have the authority to make some decisions and take some actions unilaterally. However, this distinction does not bring a mayor within the clear statutory definition of a public body. See *Gallagher v. Union Square Condominium Homeowner's Ass'n*, 397 Ill. App. 3d 1037, 1042 (2010) (refusing to read into a statute "an additional term that the legislature did not expressly include" and explaining that we must not read exceptions, limitations, or conditions into a clear and unambiguous statute).

¶ 34    Significantly, FOIA defines the term "head of the public body" to include a mayor or an "individual otherwise holding primary executive and administrative authority for the public body." 5 ILCS 140/2(e) (West 2020). The statute thus clearly distinguishes between a public body and the individual who serves as the head of a public body, such as a mayor. It is also worth noting that the records requested in *City of Champaign* included messages sent to and from the mayor. *City of Champaign*, 2013 IL App (4th) 120662, ¶¶ 1, 4, 43. The Fourth District did not distinguish between these messages and those sent between council members in reaching its decision. See *id.* ¶¶ 40-44. For these reasons, the mayor is not a public body, and the plaintiff's letter was not received by or under the control of or in possession of a public body.

¶ 35    Finally, as the trial court correctly pointed out, the expressly stated legislative purpose of FOIA is to provide the public with access to *information*. See 5 ILCS 140/1 (West 2020). Requiring the City to provide a requestor with a copy of his or her own letter would do nothing to further this purpose. For this reason, and because the letter at issue does not fit within the statutory definition of a "public record," we conclude that the plaintiff's complaint did not state a claim for a FOIA

11

violation. We find no error in the court's decision to dismiss his complaint. In light of this conclusion, we need not address the parties' contentions regarding the applicability of a statutory exemption from disclosure or the appropriateness of civil penalties.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the trial court.


¶ 38    Affirmed.